### No. 11,618.

### THE ST. MARY'S WHOLESALE FRUIT AND VEGETABLE MARKET COMPANY, LIMITED, VS. CITY OF NEW ORLEANS.

In a contract between the City of New Orleans and a contractor, the latter bound himself, àt his own expense, to alter an existing market building and to extend the same according to certain plans and specifications, within nine months of the signing of the contract, while the city agreed "to lease to the contractor the said market building as altered and extended" for a period of twenty-five years from the signing of the contract.

In the contract it was declared that the buildings were to be used as a public market. The city agreed that during the term of the lease or franchise the contractor should receive for himself all market dues or tolls, and the contractor agreed that at the termination of the lease the buildings should revert to the city without cost, and also agreed to pay and did pay to the city one thousand

dollars cash. In the contract it was stipulated that "in the event of failure to perform the work within the delay fixed, no matter from what cause, the contractor specially waived notice of default, agreeing that on failing to comply with his obligations he should be deemed to be in default by the mere act of his failure."

Subsequently to the time fixed for the completion of the buildings the city passed an ordinance in which, after reciting that the contractor had failed to comply with his obligations, it declared the contract at an end, and repealed the ordinances granting the lease or franchise.

The contractor, not negativing the recitals of the ordinance or alleging performance by him of his contract, applied for an injunction restraining the city from interfering with him in the enjoyment of the franchise or from prosecuting or punishing parties who resorted to the market for trading purpose; the old portion of the market building having, in the meantime, been used as a public market. The District Court refused the injunction and the contractor appealed.

*Held:* The judgment was correct. The thing to be leased was not the existing building, but that building "as altered and extended." The contractor stipulated to bring it *into existence for the purpose of the lease or franchise within nine months.* He did not do so. The city had the right to pass the ordinance, if for nothing else, to fix the fact of the contractor's default, carrying with it its legal consequences. Subsequently to the ordinance an offer by the contractor to complete the building would be too late.

The object on which the franchise was to operate could not thereafter be brought into existence. The contention that the city had not the right "*to declare the contract terminated*" is a pure abstraction. There was no proof that the city had prosecuted or threatened to prosecute parties who resorted to the market. If the ordinance did not *per se* by its own force terminate the contract as contended for, the contract was, through it, made impossible of execution.

It was not null and void because of the declaration complained of. *Utile per inutile non vitiatur.*

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

On February 4, 1890, the City Council of the city of New Orleans adopted an ordinance, known as Ordinance No. 4265, Council Series, by which it was resolved that the city surveyor be ordered to draw up plans and specifications for the alteration of one-half of the St. Mary's Market, nearest the river, and extension of same to be used as a wholesale fruit and vegetable market, the said alteration and extension not to cost less than twenty thousand dollars, and the same to be at the expense of the lessee, and to revert to the city at the end of the lease of said market, as altered and amended. That the City Comptroller be ordered to advertise for ten days from the passage of the resolution for bids at public auction *for the lease of said market as altered and extended,* for the above pur-

poses and under the above conditions for a period of twenty-five years, commencing and to be computed from the date of signing contract.

· This ordinance was followed by a later one, adopted April 1, 1890, known as Ordinance No. 4399, Council Series, by which it was resolved that the Mayor be authorized to enter into notarial contract with Joseph Raymond for the lease of one-half of St. Mary's Market, nearest the river, for the sum of one thousand dollars for a period of twenty-five years, commencing and to be computed from the date of the signing of the contract, and in accordance with terms and conditions as set forth in No. 4265, Council Series.

On the 11th April, 1890, by act before Joseph D. Taylor, notary public, a contract was executed between Joseph A. Shakspeare, Mayor of the city of New Orleans, in confirmation of an adjudication made by the Comptroller of the city of New Orleans, " confirming unto Mr. Joseph Raymond, contractor, *the lease* for the term of twenty-five years, to begin and be computed from the date of the said act and to end on the tenth day of April one thousand nine hundred and fifteen, *of one-half of the St. Mary's Market nearest to the Mississippi river and the extension thereof which is to be constructed in pursuance of and as part consideration of this contract* as provided in Ordinance No. 4265, Council Series, and according to the plans and specifications for said work on file in the office of the city Surveyor, which one-half of St. Mary's Market and the extension thereof are to be used as a wholesale fruit and vegetable market."

The contract bid for at auction and adjudicated to Raymond contained a clause that " in the event of failure to perform the work contracted for, no matter for what cause, the contractor specially waives notice of default, stipulating that the contractor failing to comply with his obligations shall be deemed to be in default by the mere act of his failure, and the damages and stipulation to be hereinafter made and agreed upon in a notarial contract shall begin to run from the day of such failure." In the notarial contract between the Mayor and Raymond it was agreed and stipulated "that Raymond, contractor, should commence the construction of said extensions within ninety days therefrom and should complete the same within nine months thereafter."

The consideration of the lease is declared to be:

1. That Joseph Raymond should pay to the city of New Orleans the sum of one thousand dollars cash.

2. That Joseph Raymond, contractor, should, at his own cost, charge and expense, erect and construct the extension of said St. Mary's Market, and maintain same, and the one-half of said St. Mary's Market during the existence of the lease; same to be delivered to the city of New Orleans at the expiration thereof, the whole as set forth in the contract.

The thousand dollars agreed to be paid were paid cash on the passage of the act.

On the 16th of November, 1891, Raymond and eight other persons, who seem to have become interested with him in some way, conveyed to the plaintiff: (1) All the rights and privileges derived by Joseph Raymond, under Ordinance No. 4399, Council Series. (2) All the rights derived by Joseph Raymond from the lease for the term of twenty-five years from the 11th of April, 1890, to the 11th of April, 1915, of the one-half of the St. Mary's Market nearest the Mississippi river, and all extensions thereof made by the city of New Orleans to Joseph Raymond by act before Taylor, notary, on the 11th April, 1890.

3. All the rights and privileges derived by Joseph Raymond from Ordinance No. 4779, Council Series.

4. All the rights of Joseph Raymond in a certain contract entered into between Joseph Raymond and the city of New Orleans by act of October 30, 1890, before Joseph D. Taylor, notary.

5. All the rights of Joseph Raymond, in and to all ordinances adopted by the City Council of the city of New Orleans relative to the St. Mary's Market, or St. Mary's Wholesale Fruit and Vegetable Market.

On the 27th November, 1891, the City Council and Mayor recognized the plaintiff as the owner and possessor of all the rights, titles and franchises granted by the city of New Orleans to the St. Mary's Market and the extension thereof, and particularly by virtue of Ordinances Nos. 4399, 4653 and 4779.

The specifications of the work to be done by Raymond were, subsequently to the contract with him, modified, and the period within which the work was to be done was extended.

*On the 7th November, 1893,* the City Council, reciting that the work stipulated to be done had not been done at the time contracted for

and extended, " repealed the rights and franchises granted " and the various ordinances upon which they were based.

Plaintiff then instituted the present suit, seeking to enjoin the city from interfering with their contract, and for ten thousand dollars damages.

The District Court rendered judgment against the plaintiff in favor of defendant, dismissing its suit with costs, reserving its right to sue for damages and for the return of any moneys paid or for any other cause entitling it to indemnity.   Plaintiff appealed.

*Gus A. Breaux* and *Frank S. Drolla* for Plaintiff, Appellant.

*E. A. O'Sullivan*, City Attorney, for Defendant, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J.   During the progress of the trial defendant offered testimony to prove the allegations of the answer that not a single specification, not a single condition under which the contract was granted to the Market Company, was ever carried out by the plaintiff; and further, in order to show that the conditions under which the franchise was granted had never been carried out, that it had never attempted, and never did carry out any of the terms, conditions and specifications contained in the contract between the city and plaintiff in so far as the constructing and the building of the market, or the extension of the market, in order to show that the conditions under which the franchise was granted had never been carried out.

Plaintiff objected to this testimony on the ground that the sole question before the court was one of power of the city to pass an ordinance declaring a contract entered into with another party forfeited.

The court sustained the objection, ruling that the testimony was irrelevant, stating that if the city had the power to deal absolutely with the market, then it was the sole judge of the reasons why it should exercise that power here, and that if it had not the power then the question would be irrelevant under the general rule of law invoked by plaintiff's counsel—that a party to a contract has no

14

right absolutely to terminate it, but would only have the right to sue for its forfeiture. To this ruling of the court defendant excepted.

In his reasons for judgment the District Judge declared that, plaintiff having discontinued the demand for damages, there was no other relief sought than that the city should be forever enjoined from interfering with the plaintiff's business in St. Mary's Market—the interference alleged being that the city had declared the contract forfeited, and under this declaration was threatening with arrest and prosecution persons who resort to said market to trade with the plaintiff. That the ordinance declaring the lease forfeited and at end, whether wrongful or not, was an accomplished fact, and it could not be the subject of an injunction proceeding. That the ordinance has been passed, and that, if acting under it, the city should proceed to arrest, prosecute and sentence persons, the illegality of the ordinance could be pleaded, and on appeal direct to the Supreme Court, from the judgment of the municipal court, the question could be tested. That the ordinance of repeal declares that the plaintiff, as a contractor to erect the building or market extension within a fixed term (as extended), had done nothing in that direction. It recited that it has failed after the extension of the period in which the extension of the building should be completed, and therefore it repealed all the ordinances relative to the construction of the market house, and all the rights and privileges granted thereunder. That the city had the right to contract for the erection of market houses like any other proprietor, and it had the right even after contracting for the erection of a building to end the contract and not have the building erected. That Art. 2765 of the Civil Code provides that " the proprietor has the right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred and such damages as the nature of the case may require."

That the fact that in the contract there was stipulated a lease, and that a price was paid, did not cause it to lose its character as a distinctive agreement for the construction of a market building. " It was to be built within a short time. It was to be completed at a cost of not less than twenty thousand dollars. The plans and specifications under which it was to be constructed were elaborate, going into all details. To be completed within a short period, it was there-

after to be kept in repairs until delivered to the city." The judge declared that these were the obligations of the plaintiff, and they were those of builders and undertakers of works in all essentials. That, although the payment of one thousand dollars and the right to use the market for twenty-five years were stipulated, it was manifest that the necessity of the public for a market extension was the inducement on the part of the city. A twenty thousand dollar market extension was to be promptly secured and maintained for twenty-five years; when, therefore, plaintiff failed in the work, as the ordinance recites, Art. 2765, Civil Code, justified the revocation of the contract. That the city could not compel plaintiff to specifically perform and compel it to build the market house, if it refused to build it. The District Judge, considering that the contract is, for the great part, one for building a public market; that the one thousand dollars paid was more in the nature of earnest money, and if not this, it was at least inconsiderable in proportion; that the twenty-five years' occupancy was a franchise to collect the revenues, rather than a contract of lease (Weymouth vs. The City of New Orleans and J. T. Aycock, 40 An. 348), *held*, that the city had the right, in the public interest, to declare the contract at an end under Art. 2765, C. C., leaving plaintiff to recover the amount paid and damages; that it had no right to a perpetual injunction, and that in discontinuing the claim for damages and claiming relief by injunction it has mistaken its remedy.

Plaintiff contends that the court has misapplied the provisions of Art. 2765 of the Civil Code. He maintains that that article applies to cases where the cost and expense of the structure is to fall upon the proprietor, and does not extend to those where the entire cost and expense is thrown upon the builder. He further insists in this, as he did in the District Court, that the only issue before us is that of the power of the city to pass an ordinance declaring a contract with another person forfeited, and in support of his position he calls to our attention Art. 2046 of the Civil Code, which declares that "a resolutory condition is implied in all commutative contracts to take effect in case either of the parties do not comply with his engagements; *in this case the contract is not dissolved of right. The party complaining of a breach of the contract may either sue for its dissolution with damages*, or, if the circumstances of the case permit, demand a specific performance." He says that in the face of this express

declaration that non-compliance by a party with his contract obliga-
tions does not, *ipso facto*, dissolve the contract, but that the disso-
lution has to be judicially asked for, the City of New Orleans has
undertaken to do what the law declares shall not be done: *declare*
*its contract at an end*.

We have carefully considered the argument of counsel as sought
to be applied to this case under its pleading and evidence, but we
have reached the conclusion that the judgment of the District Court
was correct.

In the first place, we find no evidence in the record in support of
the allegation that the city had threatened parties who might resort
to the market for trading purposes with prosecution and punishment.
The only action taken by the city in respect to the subject matter of
the market, so far as the record shows, is the repealing of the
ordinance under which plaintiff's rights are claimed. The mere act
of passing that ordinance furnishes no ground for an injunction. In
the next place, there is nothing presented to us in a shape which
would call upon us to pass presently upon the *effect* of the or-
dinances.

Had the plaintiff adhered to its claim for damages, we should have
had that question squarely before us. As matters stand the only
thing we are called upon to adjudicate would be an abstract
question as to the right of the Council to pass the ordinance it did.
If it did not have that right, the ordinance *per se* could work no injury
and damage.

It by no means follows, however, that because an ordinance of the
character complained of, which declares in express terms the break-
ing up of a contract as the direct and immediate effect of that de-
claration, might not bring about the result so announced, that
therefore the ordinance was, for all purposes, totally unauthorized,
illegal, absolutely null, void, and of no effect.

In the contract with Raymond, he undertook to do certain work
within a certain fixed time, and consented that he should be held as
in default by the fact itself or failure to comply with his obligations
without notice of default.

If, in point of fact, at the time the repealing ordinance was passed,
Raymond was in default, the ordinance in question, if it had *no other*
effect, would have that of placing beyond a doubt the fact of that
default, and the fact that the city stood rigidly upon its contract

rights.   There could be no question of waiver or acquiescence after the passage of that ordinance, and the Council had the undoubted right to pass it for that purpose, and to claim the benefit of the legal consequences, be they what they might, legally flowing from the ordinance, if greater and broader consequences were claimed in the ordinance as to follow than would really follow, the maxim *utile per inutile non vitiatur* would apply.   The ordinance would stand for what it was really worth.

Now if we examine into the dealings between these parties and the city the correctness of the conclusion reached by the District Judge that Raymond occupied under the ordinances and contract a dual position, that of *contractor* and that of *lessee* (if such he may be styled), is apparent.   Not only this.   It appears that the object upon which the agreement of the city and Raymond was to operate under the so-called contract of lease was not "the one-half of the St. Mary's Market nearest the Mississippi river," but the "*market as altered and extended*," and that at the time of the contract this precise thing was not yet in existence, but was stipulated by Raymond to be by him brought into existence as an entirety within a fixed time, and when so brought his rights should attach to it as a whole for twenty-five years from the date of the contract.   If this was the contract between the parties, and Raymond failed to comply with his obligation to make the alteration and extension at the time fixed, and the city by ordinance (notified to him) announced that it held the contract at an end by reason of that fact, the legal effect of its so doing would be to withdraw from under the contract the power of subsequently building the house.   Therefore "*the market and its extension*," which was to be the object of the lease or franchise, was from that time forward to be considered as not susceptible of existence, for if he was in default at the time of the passage and notification of the ordinance an offer to subsequently comply with his engagement would come too late.   Morrison vs. Wimberly, 14 An. 713.   It is manifest, as stated by the District Judge, that the main object and purpose of the city was not to obtain a building deliverable to itself without cost at the end of twenty-five years for the purposes of a market, but to extend within nine months to the people of the neighborhood increased market facilities. It would be contrary to the plain purposes of the ordinances and the contract that the erection of the building should be postponed to a

period to suit the convenience of Raymond, and that during that period the market facilities should be limited to those afforded by the original building.

If Raymond, by his course, has cut off the possibility of his building the extension in the future, he certainly could not expect to be allowed to continue the collection of dues during twenty-five years from the market in its present condition. That was not the contract of the city. Now whether we deal with the situation from the standpoint taken by the District Judge, that the contract between the parties was brought at once and directly to an end by the city, through the ordinance by the city, under the exercise of a reserved right of canceling the bargain granted by Art. 2765, or from that of considering that the contract by reason of the laches and default of one of the contracting parties has become impossible of execution in view of the non-existence of the object on which it was intended to operate, in either event the plaintiff is not entitled to the relief by injunction which he asks. The petition nowhere negatives the recitals of the repealing ordinance; nowhere claims that the contract has been complied with, and nowhere assigns the existence of any legal valid reason for non-compliance.

Virtually conceding that it is in default, its whole claim seems to be that, notwithstanding that fact, it should be entitled to collect the revenues from the market as it is, during a litigation which it seeks to force and doubtless to prolong. Under the condition of the case as it reaches us, with its pleadings and the evidence actually introduced, we do not think the testimony offered by the defendant and excluded important. We think, however, it should have been properly admitted, leaving its effect to be determined.

Judgment affirmed.